Joan W. Baldridge Director Department of Arkansas Heritage Suite 200, 225 East Markham Little Rock, Arkansas 72201
Dear Ms. Baldridge:
This is in response to your request for an opinion regarding Act 753 of 1991, which is entitled "An Act to Prohibit the Desecration of Human Skeletal Burial Remains in Unregistered Cemeteries; to Prohibit Trade or Commercial Display of Human Skeletal Burial Remains or Associated Burial Furniture; and for Other Purposes."
Your question pertains to the procedures to be followed in consultation with descendants and interested parties, the scientific study of human remains, and repatriation and reburial issues. You have asked, specifically, who should develop regulations for Act 753.
The act establishes certain requirements and penalties in connection with the treatment of human burials and human skeletal burial remains. It assigns various classes of offenses to certain activities, including the buying, selling or bartering of human skeletal remains or burial furniture (as defined therein), the display of such remains for profit, and the desecration of a burial ground and associated burial furniture. Acts 1991, No. 753, Sections 4,5, and 6. The act does not require or authorize any regulations in this regard, nor can we infer any grant of authority with respect to the development of any such regulations.
The act then continues by recognizing the benefits of the "scientific study of human skeletal burial remains and burial furniture." Acts 1991, No. 753, § 7. Section 7 of the act states:
 Therefore, when justified by `A State Plan for the Conservation of Archeological Resources in Arkansas' as promulgated by the State Archeologist and the State Historic Preservation Officer, the investigation, excavation, removal and analysis of human skeletal burial remains and burial furniture is authorized, and if done must be carried out with the consent of the landowner and consultation with the appropriate tribe, if identifiable, and under the direction of archeologists employed by the state or the U.S. government or by archeologists meeting the U.S. Department of Interior's professional qualifications standards found in the current Code of Federal Regulations.
It thus appears that the justification for a scientific study is to be determined by the "State Plan" promulgated by the State Archeologist and the State Historic Preservation Officer. The act does not refer to any specific authority to develop regulations in this regard. The General Assembly apparently intended for the State Plan to address the justification for a scientific study. If authorized, in accordance with the State Plan, the actual investigation, excavation, removal, and analysis of human skeletal burial remains and burial furniture must be carried out under the direction of archeologists employed by the state or U.S. government, or by archeologists meeting the U.S. Department of Interior's professional qualifications standards. Acts 1991, No. 753, § 7. The State Plan may, in my opinion, address general procedures in connection with studies, and may include procedures to be followed in obtaining the consent of landowners and in consulting with descendants and interested parties.
With regard to exhuming human skeletal burial remains for relocation, it is my opinion that the regulatory authority of the State Board of Health may reasonably be construed to include such matters. See A.C.A. § 20-7-109(a) (power of State Board of Health to make all necessary and reasonable rules and regulations of a general nature for the protection of the public health . . ."). There is, however, no clear requirement that the State Board develop regulations in this area. If questions remain with regard to procedures to be followed, concerning either the relocation or disposition of unclaimed human skeletal burial remains, we suggest that the State Board be consulted.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elisabeth A. Walker.
Sincerely,
WINSTON BRYANT Attorney General
WB:arb